UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

JAMES RICHARD SUSCHIL and            Case No. DG 05-17246
RENEE SUE SUCHIL,                    Hon. Scott W. Dales

            Debtors.
_____/

JEFF A. MOYER,

            Plaintiff,            Adversary Proceeding
                                     No. 07-80585
v.

LEE VANPOPERING and SHAGBARK
DEVELOPMENT, INC.,

            Defendants.
_____/


## MEMORANDUM OF DECISION REGARDING MOTION TO COMPEL

PRESENT:   HONORABLE SCOTT W. DALES
                 United States Bankruptcy Judge


     Chapter 7 Trustee, Jeff A. Moyer ("Plaintiff"), sued Lee VanPopering and his

company, Shagbark Development, Inc. (collectively "Defendants") to obtain a judgment

declaring the parties' rights in a $70,000 fund (the "Fund"). The Fund includes the

proceeds from the sale of various condominium units in which Shagbark Development,

Inc. and Windrush, Inc. ("Windrush") held an interest.  Plaintiff asserted Windrush's rights to the Fund.[1]

After presiding over a trial in this adversary proceeding on October 6, 2008, I entered judgment in the Defendants' favor (the "Judgment") (DN 40), declaring that the Plaintiff recover nothing from the Defendants or the Fund.   The Plaintiff did not appeal from the Judgment.

After I announced my decision at the conclusion of the trial, the following colloquy occurred:

> COURT:   . . . I assume it will take the trustee some time to disburse [the Fund] and the trustee may have some requirements that can't – with respect to the escrow that can't be accomplished right away. I don't know how much time you need.  But the import of the decision is that the money does not belong to Windrush and so I would expect you to take some steps with respect to that money.
>
> MR. MOYER: Your Honor, thank you. Once the court enters an order that becomes final and non-appealable, that's sufficient for my audit purposes to cut a check and then turn over the entire –
>
> THE COURT: Okay.
>
> MR. MOYER: -- amount of the funds.

See Motion to Compel Turnover of Funds, at Exh. 3 (DN 43-3) (Excerpt of trial transcript).  It is clear that the parties and the court tried this case as if the ultimate order would award the Fund either to Plaintiff or the Defendants.

---

[1] After Windrush's sole shareholders (debtors James and Renee Suschil) filed their bankruptcy petition, the Plaintiff succeeded to their rights as Windrush's shareholders. See 11 U.S.C. § 541(a). In effect, Plaintiff sued the Defendants through Windrush, as if this adversary proceeding were a shareholder derivative action. See Fed. R. Civ. P. 23.1.  Plaintiff intended to liberate the Fund from Defendants' claims, and distribute the Fund to the Suschils' Chapter 7 estate as a dividend on the Windrush shares that the Suschils owned prepetition. I found "related to" jurisdiction under 28 U.S.C. § 1334 because of this conceivable effect on the estate.

Thereafter, the Defendants asked the Plaintiff to remit the Fund to them, at which point the Plaintiff asserted what his counsel characterized as a right of "setoff" premised upon claims under the Michigan Building Contract Fund Act ("MBCFA"), MCLA § 570.151 et seq., and conversion claims.  The Plaintiff claimed to have discovered these setoff rights approximately one month before trial. The Plaintiff did not amend his complaint to include the MBCFA or conversion claims, and the Defendants evidently did not consent to any such amendment.

When the Plaintiff refused to release the Fund, the Defendants filed a Motion to Compel Turnover of Escrowed Funds (the "Motion") (DN 43).  The Plaintiff filed a Brief in Opposition to Defendant's Motion to Compel Turnover of Escrowed Funds (DN 47).  I heard argument on January 6, 2009, and took the Motion under advisement. The following constitutes my reasons for granting the Motion.

I reject the Plaintiff's reliance on a supposed right of setoff.  As the Plaintiff concedes, he is holding the Fund only provisionally in order to secure the claims he is asserting in a newly-filed adversary proceeding under the caption Windrush, Inc. v. VanPopering et al., Adv. Pro. 08-80537 (the "New Lawsuit").  Setoff is an equitable remedy, depending ultimately upon the court's determination that the equities support such relief.  Here, Plaintiff did not invoke the court's equitable jurisdiction.  Instead, by refusing to release the Fund that I had previously determined belonged to the Defendants, the Plaintiff attempted to strong-arm the Defendants into relinquishing their rights to oppose the claims asserted in the New Lawsuit.  Only when faced with the Motion did the Plaintiff assert a right of setoff in court.

This response to the Judgment strikes me as utterly inequitable. It is a raw assertion of authority that the Plaintiff does not possess and is inconsistent with his original invocation of the court's jurisdiction to determine the parties' rights in the Fund. In any event, the Plaintiff has not properly asked the court to approve a setoff which, incidentally, would involve the *permanent* determination (and netting-out) of claims and counterclaims in an adversary proceeding not yet ripe for trial.  It is not accurate to characterize the Plaintiff's provisional retention of the Fund as a setoff.  Rather, the Plaintiff is asking the court to bless his temporary "setoff" by enjoining the Defendants, *pendente lite*, from obtaining control of, and possibly dissipating, the Fund that unquestionably belongs to them.

The United States Bankruptcy Court, as a federal court, has no authority to interfere with the Defendants' property interests in the Fund prior to entry of a judgment in the New Lawsuit, so it is premature to recognize any setoff right at this time. See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 320-21 (1999) (reversing preliminary injunction that restrained defendant from transferring assets pending trial, and invoking the "well established general rule" that "a judgment establishing the debt [is] necessary before a court of equity [will] interfere with the debtor's use of his property").  This same restriction certainly applies to a Chapter 7 Trustee -- a private litigant who is already bound by a judicial determination that he has no interest in the very Fund over which he continues to assert control.  In addition to running afoul of the Judgment and Grupo Mexicano, the Plaintiff's position flouts other court rules, including Fed. R. Civ. P. 64 and 65 (applicable in the New Lawsuit), and

Fed. R. Civ. P. 60 and Fed. R. Bankr. P. 9024 (applicable to the Judgment in the instant proceeding).

At oral argument the Plaintiff expressed confidence in his likelihood of success in the New Lawsuit, but most litigants similarly paint a rosy picture.  Given the entry of the Judgment, perhaps the doctrine of merger and the rule against claim-splitting should temper Plaintiff's optimism.  See Restatement of Judgments (2d), § 24.  I do not know whether the MBCFA and conversion claims arise out of the same "transaction" as the claims that merged into the Judgment, but I certainly know that, as between the Plaintiff and the Defendants, the Defendants are entitled to the Fund.  I will not permit the Plaintiff to deprive the Defendants of their victory any longer.

In summary, Plaintiff styled his complaint as in the nature of interpleader, see Complaint for Interpleader and Other Relief (DN 1), and the court determined, at Plaintiff's request, which of the parties had a better claim to the Fund.  I regard this unsuccessful Plaintiff's retention of the Fund as anathema to the Judgment, and I will not abide further delay in carrying the Judgment into effect.

For the foregoing reasons, I will enter an order granting the Motion, and directing the Plaintiff to remit the Fund to the Defendants or their counsel forthwith.

END OF ORDER

**IT IS SO ORDERED.**      Scott W. Dales
United States Bankruptcy Judge   **Dated: January 08, 2009**